UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

R<small>UTH</small> H<small>ANNA</small>,

     Plaintiff,            Hon. Hala Y. Jarbou

v.                                        Case No. 1:23-cv-324

C<small>OMMISSIONER OF</small>
S<small>OCIAL</small> S<small>ECURITY</small>,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v.*

*Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 48 years of age on her alleged disability onset date. (PageID.1327). Plaintiff possesses an eighth-grade education and worked previously as a home attendant and bookkeeper. (PageID.32-33, 66). Plaintiff applied for benefits on March 7, 2019, alleging that she had been disabled since July 1, 2018, due to psoriatic arthritis, lupus, and depression. (PageID.23, 203).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ David Read, in an opinion dated June 18, 2020, determined that Plaintiff did not qualify for disability benefits. (PageID.23-34). Plaintiff later initiated action in this Court seeking review of the ALJ's decision. On February 11, 2022, the matter was remanded to the Commissioner. (PageID.1377).

Following a second administrative hearing, ALJ Read, in an opinion dated December 14, 2022, again determined that Plaintiff did not qualify for disability benefits. (PageID.1317-71). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from lupus, psoriatic arthritis, degenerative joint disease of the shoulders, and depressive disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the

Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.1320-23).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can occasionally reach overhead bilaterally; (2) she can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds; (3) she can occasionally balance, stoop, kneel, crouch, and crawl; (4) she can occasionally work in extreme heat and extreme cold but can never work at unprotected heights; (5) she can never perform production rate work; and (6) can occasionally have changes in tasks or demands. (PageID.1323).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid.*

In this case, a vocational expert testified that there existed approximately 122,000 jobs in the national economy that an individual with Plaintiff's RFC could perform. (PageID.1327-28). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and

others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I. Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff argues that she is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Plaintiff argues that "the ALJ's finding that [she] would be able to sustain the walking and standing requirements of light work is not supported by substantial evidence." (ECF No. 8 at PageID.2073). Plaintiff further argues that the ALJ failed to sufficiently account for her inability to maintain concentration, persistence or pace. (*Id.*).

### A. Walking and Standing

The ALJ limited Plaintiff to a limited range of light work. Light work involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-

10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

As the ALJ observed, Plaintiff exhibited normal strength, gait, and range of motion on examination.  (ECF No. 4-13 at PageID.1324).  The Court recognizes that much of the evidence to which the ALJ cited dates to 2018-2019.  But treatment notes from November 2020, indicate that Plaintiff's gait is "normal" with 5/5 strength.  (ECF No. 4-20 at PageID.1900).  Moreover, in November 2021, Plaintiff reported that she "feels well with no complaints" and was exercising 2-3 times weekly.  (PageID.1883).  Plaintiff was also observed to walk with a "normal" gait and exhibited 5/5 strength.   (PageID.1884-85).

The ALJ also detailed that Plaintiff "reported actively working to multiple providers."  (ECF No. 4-13 at PageID.1325).  Throughout 2020, Plaintiff reported that she worked "full-time" because she owns and operates an Adult Foster Care facility.  (ECF No. 4-18 at PageID.1580, 1585, 1590, 1606, 1611, 1617, 1622, 1628, 1633).  Plaintiff reported that "with not being able to find help," she was "providing all the care" at her facility.  (PageID.1612, 1618, 1623).  The following year, Plaintiff reported that she still owned and operated an Adult Foster Care facility but reported that she was only working "part-time."  (PageID.1666, 1684, 1690, 1696, 1702, 1708, 1714, 1720).  Other care providers likewise documented that Plaintiff was working "full-time" operating her Adult Foster Care business.  (ECF No. 4-19 at PageID.1811, 1826, 1835, 1861).  Plaintiff also reported that she "has a cat rescue."  (ECF No. 4-18 at PageID.1585, 1590, 1606, 1611, 1617, 1622, 1628, 1633).

B.  Ability to Maintain Concentration, Persistence or Pace

With respect to non-exertional impairments, the ALJ limited Plaintiff to positions not involving production rate work and only occasional changes in tasks or demands. The ALJ also implicitly conceded that Plaintiff would be off-task as much as ten percent of the workday. (ECF No. 4-13 at PageID.1365-66). Plaintiff argues that these limitations insufficiently account for her non-exertional limitations. Plaintiff further argues that she would be off-task more than 10 percent of the workday which, according to the vocational expert, would preclude all work.

The record contains counseling treatment notes from multiple providers over a lengthy period of time. (PageID.941-94, 998-1248, 1563-1724, 1798-1863). The results of these examinations do not support the argument that Plaintiff is impaired to a greater extent than the ALJ recognized. The results of mental status examinations were largely unremarkable and Plaintiff's care providers did not contemporaneously impose limitations that are inconsistent with the ALJ's RFC. Moreover, Plaintiff's acknowledged activity, over a significant period of time, operating a business and caring for patients further supports the ALJ's assessment.

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the

medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

This is what the ALJ in this matter did, and the ALJ's RFC assessment is supported by substantial evidence. Plaintiff's argument is essentially that the ALJ should have weighed and evaluated the evidence differently. This is not grounds for relief, however. Accordingly, this argument is rejected.

## II.  Medical Source Opinions

Two medical professionals provided statements regarding Plaintiff's impairments and ability to function: (1) Nurse Practitioner, Iris Zink, and (2) Samantha Wheeler, Ph.D. Plaintiff argues that the ALJ failed to afford sufficient weight to these statements.

Because Plaintiff filed her application after March 27, 2017, the ALJ evaluated the opinions in question pursuant to 20 C.F.R. § 416.920c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a). Instead, the ALJ is required to articulate her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 416.920c(b)(1).

These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* § 416.920c(1)-(5). The ALJ must explain her consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id.* § 416.920c(b)(2), (3). The regulations define "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 416.920c(c)(1)-(2).

A. Iris Zink, N.P.

On two separate occasions, Zink responded to questions posed by Plaintiff's attorney. (PageID.661-63, 2042-44). On a third occasion, Zink authored a brief supplement purporting to clarify or correct information in Plaintiff's medical record. (ECF No. 4-10 at PageID.995).

In her first question and answer session with Plaintiff's counsel, on June 24, 2019, Zink asserted that Plaintiff "exceeds" the criteria for Section 14.02 of the Listing of Impairments. (ECF No. 4-8 at PageID.661-62). Zink then opined that

-10-

Plaintiff would be unable to work a sedentary job with a sit/stand option because Plaintiff "has to take a nap during the day and lie down several times during the day." (PageID.662). Zink was asked to articulate specific functional limitations for Plaintiff but declined on the ground she was "not comfortable" doing so. (*Id.*).

On May 15, 2000, Zink authored a brief supplement statement in which she asserted that, "since July 2018, [Plaintiff] has not engaged in any significant work activity."[1] (ECF No. 4-10 at PageID.995). On November 8, 2022, Zink responded to additional questions posed by Plaintiff's attorney. (ECF No. 4-20 at PageID.2042-44). Zink asserted that Plaintiff's condition had continued to worsen and that as a result Plaintiff was unable to walk "for more than 20 minutes at a time" and "couldn't stand and walk for more than an hour a day." (PageID.2043).

The ALJ concluded that Zink's statements were "unpersuasive as they overstate [Plaintiff's] degree of dysfunction." (ECF No. 4-13 at PageID.1326). As the ALJ observed, Zink's opinions "are unsupported by contemporaneous treatment notes and inconsistent with the record as a whole." (*Id.*). Zink's own treatment notes do not support her extreme opinions. (PageID.320-36, 444-47, 452-66, 528-32, 550-72, 604-20, 778-96, 845-49, 856-78, 922-26, 1736-58, 1925-42, 1962-2001). Moreover, Zink's opinion that Plaintiff satisfied Section 14.02 of the Listings is not

---

[1] This statement is contradicted by the contemporaneous treatment notes by Plaintiff's care providers, noted above, which indicate that Plaintiff continued to operate her adult foster care business well into 2021. (PageID.1580, 1585, 1590, 1606, 1611-12, 1617-18, 1622-23, 1628, 1633, 1666, 1684, 1690, 1696, 1702, 1708, 1714, 1720).

entitled to any weight as that is a matter reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3)(iv). Finally, it is fair to question Zink's opinions given that she appears to have not been aware that Plaintiff continued to operate her adult foster care business well into 2021.

In sum, the ALJ articulated good reasons, supported by substantial evidence, for discounting Ms. Zink's opinions. Accordingly, this argument is rejected.

B. Samantha Wheeler, Ph.D.

Wheeler did not treat Plaintiff but rather performed a consultive examination on May 24, 2019. (ECF No. 4-8 at PageID.653-58). Dr. Wheeler concluded that Plaintiff "demonstrates no difficulty in understanding, remembering and applying information" and "gets along well with others and has no difficulty with social interaction." (PageID.657). Dr. Wheeler also determined, however, that Plaintiff "demonstrates moderate difficulty with concentration, persistence or pace" and "will likely struggle to work a full workday without numerous rest periods." (*Id.*).

The ALJ found Wheeler's opinion persuasive and accounted for such in his RFC, specifically precluding Plaintiff from production rate work and only occasional changes in tasks or demands. The ALJ also implicitly conceded that Plaintiff would be off-task as much as ten percent of the workday. (ECF No. 4-13 at PageID.1365-66). Plaintiff argues that Dr. Wheeler's comment that Plaintiff required "numerous rest periods" somehow means that she will be off-task more than ten percent of the day. This is simply speculation. Plaintiff could have sought clarification on this matter from Wheeler but opted not to. This argument is, therefore, rejected.

C.   Larry Irey, Ph.D. and Dr. Catherine Mazei

In 2019, Dr. Irey, after reviewing the then existing medical record, concluded that Plaintiff could perform "simple tasks in jobs that can tolerate some variability in sustained concentration and that do not require a fast paced production quota." (ECF No. 4-3 at PageID.88). In 2019, Dr. Mazei, after reviewing the then existing medical record, concluded that Plaintiff could perform light work. (PageID.85-87).

The ALJ found these doctors' opinions persuasive. (ECF No. 4-13 at PageID.1325-26). Plaintiff argues this is error because the subsequent medical record undermines the doctors' opinions. The ALJ considered and discussed the record post-dating the doctors' opinions both generally and specifically in assessing the opinions in question. ALJs are regularly required to assess opinions by medical professionals rendered in absence of the entire medical record. Plaintiff has identified no authority that such is improper. This argument is, therefore, rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

-13-

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                      Respectfully submitted,

Date: January 26, 2024                      /s/ Phillip J. Green
                                                  PHILLIP J. GREEN
                                                  United States Magistrate Judge